Danzey v. Smith.

## NANCY DANZEY AND OTHERS V. SMITH AND OTHERS.

The parties or the heirs of the parties to a conveyance cannot be permitted to impeach it on the ground that it was done to hinder, delay, or defraud the creditors of the grantor. (Note 87.)

Where there was a conveyance of slaves in fraud of creditors, but the grantor remained in possession until he died, after which the grantee obtained the possession: *Held*, in a suit by the heirs of the grantor, that the circumstance of the grantor's remaining in possession did not render the deed less binding upon him and his heirs.

If the administrator of a fraudulent vendor neglect or fail to use the necessary and appropriate means of subjecting the property fraudulently conveyed to the payment of the debts of the intestate, it would lay the foundation for a suit against him on the part of the creditors. (Note 88.)

Where the court below refused leave to amend, but it did not appear what the proposed amendment was, nor how the petition could have been amended so as to state a cause of action, the court affirmed the judgment.

Appeal from Liberty. The complainants filed their bill of complaint, stating that the complainant Nancy Danzey was the widow, and the said Rebecca Ann, William N., Julia Ann, and Mary Ann Danzey are the children of Richard Danzey, deceased, late of the county of Liberty. They complained of William A. Smith and Pamelia Smith, his wife, and of Bryan Danzey that Richard Danzey, deceased, was a resident citizen of Texas in 1840; that, with other property, he was possessed of a certain female slave named Rena and her children; that in and about the year 1845 the said Richard became greatly embarrassed, and fearing his property would be sacrificed for the payment of his debts, did, in August, 1845, convey by writing, to his daughter Pamelia Ann Moore, the said slave Rena and her four children, to wit, John, a boy aged about nine years; Martha, a girl aged about six years; Everett, a boy aged about three years; and Sam, a boy aged three months. It was alleged that, notwithstanding the recitation in the said bill of conveyance of the receipt [4 1 2] and payment of the money by the parties to the same, no money was paid; that the sum of $2,500 was recited as the consideration paid; that the said Pamelia well understood the object of the conveyance, and did not control or take possession of the said slaves, but they continued in the possession and under the absolute control of said Richard until his death; that shortly after the death of the said Richard the said Pamelia intermarried with the said William A. Smith; that about the time of the intermarriage of the said Pamelia with the said Smith, Bryan Danzey took out letters of administration on the estate of Richard Danzey; and that he, the said Bryan, William A. Smith, and his wife Pamelia, combining and colluding together, took from the possession of the petitioners, the family of the said Richard, the said slaves, and that they passed into the possession of the said William A. and his wife Pamelia, and had remained in their possession ever since; that Bryan Danzey, the legal representative of the said Richard, had wholly neglected and refused to bring suit either for the said slaves or for the price of them; that complainants believed and averred that the said Bryan Danzey confederated and colluded with the said Smith and wife to defraud the creditors of the said Richard and petitioners of the said slaves, and to keep the price of the same from coming into the administration and distribution of said estate according to law. They prayed that the conveyance be set aside and decreed to be null and void, and the said slaves decreed to pass as assets in the hands of the legal representative of the said Richard, to be administered and distributed according to law, or that the price of the same be decreed to be paid, with interest, to the legal representative, to be administered or distributed, &c. The defendants demurred to the bill of the petitioners, and the court sustained the demurrer. At the time the court announced its judgment on the demurrer the plaintiffs asked leave to amend their petition. The application was rejected and the cause dismissed.

## Danzey v. Smith.

*Preacher*, for appellants.

I. The demurrer ought to have been special and pointed. A fraudulent intent should not be inferred or presumed from the allegations of being in debt, &c.

II. If to "delay and hinder" be presumed, we say that the same was not then (as now) prohibited by any positive law; that it was not then contrary to public law or policy; that by statute it was simply void as to those standing in the relation of creditors.

III. The deed binds equally all the parties to what they legally promised to do.

IV. The possession not being changed, the rights of the parties were not changed. The defendant, the daughter, had no legal right to the property, if no money was to be paid, unless possession accompanied the conveyance.

V. The defendants' fraud and collusion in obtaining possession after the death of R. Danzey, without paying the money then or before, was a violation of the vested rights of these plaintiffs, and the defendants acquired no rights thereby. (Story Eq., sec. 392; Story on Contracts, sec. 803.)

VI. As no money was paid, and the contract recites consideration of the $2,500, and as the possession was obtained subsequently to the death of R. Danzey, without the payment of the purchase-money, a new equity, a new assumpsit, was then created; and although the writing recites the receipt of the purchase-money, yet a receipt even is open to inquiry, and the admission by demurrer acknowledging the fact creates an equity in favor of these plaintiffs to have the same paid to the legal representative of R. Danzey, and a lien on the property therefor. (2 Story Eq., 4th ed., sec. 1199 and note 2, p. 608; Story on Contracts, secs. 695, 803, 981.)

*Branch* and *Cleveland*, for appellees. In support of the demurrer it is contended that the conveyance, although fraudulent as against creditors, is nevertheless binding upon the parties; that the grantor could not, nor can his heirs, aver a want of consideration to avoid the sale; that the appellees [414] have title defeasible by creditors only; for the statute, while it anxiously protects the interests of creditors, affords no relief to the grantor or his representatives. (2 Bibb. R., 91; Id., 416; 4 Bibb R., 65; 1 Brock R., 511; 1 B. & H. Dig., 574; 1 Story Eq.) "An executor or administrator cannot be held as trustee of a creditor of the deceased." (8 Mass. R., 246.) Upon amendment, see 34th section of an act to regulate proceedings in the District Courts, 1846.

LIPSCOMB, J.   Two questions are presented for our consideration:

1st. Does the petition show no cause of action or grounds of relief?

2d. Was the petition so utterly bad as to preclude all possibility of its being so amended as to give a right of action?

The petition sets out a conveyance made with an intent to defeat and defraud creditors. It can bear no other construction, as it alleges that the pretended vendor was greatly embarrassed by his debts, and that he made the conveyance to prevent a sacrifice of his property, without receiving any consideration therefor. Now, if this be true, there can be no doubt that it was alike repugnant to law and to common honesty. And if the suit was by a creditor of the vendor, there can be no sort of doubt that such pretended and fraudulent sale would be held null and void, and the property so fraudulently conveyed be subjected to the payment of all prior indebtedness and to all accruing whilst the vendor remained in possession. In such case, had the administrator of the fraudulent vendor neglected or failed to use the necessary and appropriate means of subjecting property so fraudulently conveyed by his intestate to the payment of the debts of his intestate, it would have laid the foundation for a suit against him on the part of the creditors, and more especially if the administrator had fraudulently combined with the vendees to defraud the creditors. In fine, if this suit had been in the [415] name of a creditor or creditors,

## Danzey v. Smith.

I could not have hesitated a moment in saying the demurrer ought to have been overruled. But unfortunately the complainants in the suit can only occupy the ground that the fraudulent vendor could have taken himself if he was living. And he would not be permitted to avoid his own bill of sale on the ground that he had fraudulently made it. Against him, in the absence of the claims of creditors, it would have been valid. This is an undoubted rule of the common law, and it is much more stringent than the civil law is believed to be. In Louisiana, under the influence of, as I presume, the principles of the civil law, although such fraudulent sale would not shield the property from the creditor nor from an innocent purchaser under the fraudulent vendee, yet between the parties themselves the vendor could reclaim the property. And it is said to be founded on this principle, that the vendor and vendee are equal in guilt; but if the vendee were permitted to take an advantage of this fraudulent transaction, and appropriated the property to his own use, he would therein commit a double fraud and outweigh his partner in crime. This weighing, balancing, and offsetting guilt between the parties for the purpose of settling degrees of turpitude, though very refined, would seem to be, as far as the parties are concerned, more just than the rule of the common law.

But when the consequences to innocent persons arising from the two rules is considered, advantage is perhaps found to be with the sterner common-law doctrine. In the one case the little danger and risk would be an inducement to the more frequent efforts to commit the fraud, whilst that want of confidence that to a greater or less degree must always prevail between the vicious would restrain them from confiding in each other to perpetrate the fraud.

The ground taken by the appellants' counsel and pressed with great earnestness upon the court is not believed to be well founded: that is, that as the vendor had never surrendered the possession of the slaves, the contemplated fraud was not [**416**] consummated. If this distinction could be sustained, it would greatly aid in the accomplishment of the fraudulent intent, and behind it the party could safely intrench himself by making the conveyance and continuing to hold on to the possession. If he should succeed in hindering his creditors and avoiding the payment of his debts, he would have done so without incurring any risk with the fraudulent vendee. If, however, he should fail, and the property be taken in execution, he then could assume the position of one who had been tempted to commit a fraud, but had yielded to the influence of better principles. In fact, so far from allowing a favorable presumption to arise from his continuing in possession after the conveyance, it is in law the reverse, because that fact of itself constitutes a badge of fraud.

The next question is as to the petition being amendable. The court refused leave to amend. What was the amendment proposed the record does not inform us, and in the absence of such information it would be difficult to say that there was error in such refusal. The structure of a petition might be such as to point of itself to an amendable defect; and in such case perhaps it would not be going too far, in a revising court, to reverse the decision of the court below, should it have refused leave to amend. Such, however, is not the character of the petition in this case, and it is difficult to conceive of an amendment that would give a right of action to these complainants.

Judgment affirmed.

Note 87.—Epperson v. Young, 8 T., 135; McClenny v. Floyd, 10 T., 159; Wilson v Trawick. 10 T., 428; Robinson v. Martel, 11 T., 149; Fowler v. Stonum, 11 T., 478; Hoeser v. Kraeka, 29 T., 450.

Note 88.—But see Cobb v. Norwood, 11 T., 556; Avery v. Avery, 12 T., 54; Connell v. Chandler, 13 T., 5; Seawell v. Lowery, 16 T., 47. When the fraudulent deed has not been consummated by delivery, it is assets in the hands of the administrator. (Hunt v. Butterworth, 21 T., 133.)