McFarland v. Hall.

W. Y. McFarland v. John W. Hall's Heirs.

Where the plaintiff sued for partition, and the defendants answered, not denying the allegations, but joining in the prayer for partition, and the case was submitted to the Court upon the petition and answers, exhibits and proofs, without a jury, and the Court rendered a decree ascertaining the rights of the respective parties, and appointing Commissioners to divide the land in accordance with the decree, and to report at the next Term of the Court " for its final adjudication thereon," it was held that the decree was final, and not interlocutory.

It would seem that where a party fails to make application for the right of trial by jury in the trial of a cause in Equity in the District Court, (Const. Art. 4, Sec. 16;) or perhaps the rule is confined to cases where it appears by the record that he waived such trial; that in such cases, the decree of the Court is more conclusive than the decrees of Courts of Equity where trial by jury is not demandable of right in causes in Equity. But quere?

The judgment (of partition, appointing Commissioners to execute it, and report at next Term,) is not the less final, as respects the rights of the parties, which it adjudicates, because the disposition of the costs was reserved until after the report of the Commissioners.

As the decree disposed of the issues, and settled definitively the rights of the parties, it was not subject to revision, in the same Court, at a subsequent Term, unless for causes which would authorize a new trial or review.

While the two parties to a suit are before the Court for any purpose, as, for example, where there has been a final decree of partition, and the appointment of Commissioners to execute it and report for the final adjudication of the Court thereon, which final adjudication has not been had, a new original petition or proceeding is not necessary in order to obtain a new trial or review of the final decree; if sufficient matter be shown, the form of the proceeding would not be material.

McFarland v. Hall.

Where, at the next Term after a final judgment of partition, the defendants filed their petition, alleging that the judgment by mistake included some land not held in common by the parties, which was alleged to be the exclusive property of the defendants; and the original plaintiff excepted to said petition on the ground that the judgment was in strict conformity with the rights of the parties, and that the defendants were precluded by said judgment from setting up any adverse or exclusive claim to the land in question, and from claiming any other or greater rights than by said judgment were adjudicated to them; which exception was overruled, and the defendants afterwards had judgment for the land so alleged by them to have been included in the original judgment by mistake; on appeal by the original plaintiff, the Court reversed the judgment on the ground that the judgment of partition corresponded with the pleadings, was final, and the petition of defendants contained no sufficient averments for a new trial or review.

The fact that a judgment of partition, appointing Commissioners to execute it, required the Commissioners to make their report to the next Term of the Court, " for its final adjudication thereon," did not make such judgment interlocutory.

Appeal from Washington.   Tried below before the Hon. R. E. B. Baylor.

Suit commenced January 29th, 1853, by appellant, in his own right and as administrator of Edward Berry, for the partition of certain undivided interests in a tract of six hundred and forty two acres of land, including the site of the town of Washington.

The petition alleged that on or about the 24th March, 1835, John W. Hall, being the owner of one fourth of a league of land lying in Washington county, &c., part of a half league originally granted to Andrew Robinson, entered into a written agreement with Miller & Somerville, Asa Hoxey and Thomas Gay, by which he agreed to sell to them an undivided interest of three-fourths in six hundred and forty acres of land, part of the said quarter of a league, for the purpose of laying off a town thereupon to be called Washington ; which said agreement is now to the Court shown, &c. ; that in pursuance of said obligation, on the — day of January, 1836, Hall conveyed to said parties " an undivided three-fourths interest in the said

" tract of land, including the site of the said town of Washing-
" ton, which is bounded as follows."   Here  the petition de-
scribed the six  hundred  and  forty acres, commencing at the
upper  corner  on  the  river, thence  running  back, down, to
the  river, " thence. up  the  river, with  the  meanders, to
" to  the  place  of  beginning, containing  six  hundred and
" forty acres."   " And  the  said  Miller  and Somerville, Asa
" Hoxey and Thomas  Gay, then and  there to the said deed
" added their written agreement, that  the  said  John W. Hall
" should have the exclusive ownership  of  the  Ferry over the
" Brazos river  at  the  said  town  of Washington ; which said
" deed is now to the Court shown, &c."

Your petitioner would  further represent, that the said par-
ties, proprietors, upon the  said  six  hundred  and  forty acres
surveyed and laid out the town of Washington, a plat and ex‘
emplification of which is now here  brought into Court for ref-
erence thereto, (by consent this plat was omitted in making up
the transcript.—REPS.) by which it will be seen that  the said
town was  laid  off  in  streets, blocks and lots, which were
named and numbered as thereupon represented, so  as  to dis-
tinguish the same,  and  by which it will  also  be  seen, that a
large  portion of said tract of  land was not surveyed and  laid
out into streets, blocks and lots as aforesaid.

The petition then  alleged the sales of lots,  most of them at
public auction on credit, the purchasers receiving  certificates;
and your petitioner now here files a list, or memorandum (omit-
ted by consent in making up the  transcript,—REPS.) of lots
sold, to which is added the names of the purchasers, &c., as ap-
pears by the  memorandum kept by the secretary of said town
company, and by which it will appear to the Court what lots
in said town, and also what part of said six hundred and  forty
acres of land still belongs to  said town  company and is now
subject to partition and distribution amongst them and  their
heirs and assigns.

The petition then alleges the  purchase of Hoxey's interest

by himself; of Miller's interest by Bailey ; of Somerville's interest by Peter W. Grayson ; and he further showeth that there are many other persons pretending and setting up that they have some right or interest in and to said town tract ; but what legal right or interest, and whether they have any and how the same is derived, your petitioner is not advised and cannot pretend to say ; and neither can he name all of said persons, who thus pretend and set up a right or interest in said town tract ; but he has been informed and believes that one Elizabeth Cartwright and one Church Cartwright, and others to your petitioner unknown, set up and pretend that they had some such right and interest as aforesaid, and when the names of such other persons shall be discovered, he prays that they also may be made parties defendant to this petition.

The petition then alleged the death of John W. Hall, Thomas Gay and Peter W. Grayson, and stated the names of their heirs, as far as known, making all, known and unknown parties to the suit ; also the other claimants previously named.

Your petitioner further prays your Honor to cause the rights and interests which each one of the parties aforesaid has in and to the said town tract of land and to said six hundred and forty acres of land to be ascertained, and that you cause a partition and division of the same to be made, as best it can be, for the interest of those to whom it belongs ; that you cause that portion of the said town lots and blocks, and land belonging to each one to be divided, partitioned and set apart, so that the same may be held and owned in severalty, and known and distinguished as such, and if this cannot be done so as to render justice, and promote the interest of all the parties, owning an interest in the same, that you will, in that case, cause the said unsold portion of the said town and the whole of the said six hundred and forty acres of land to be sold, and the money arising therefrom to be divided and partitioned amongst those who own any interest in the said

town and the said land, and in proportion to their interest therein, and that you make such decree herein as will settle and secure the rights and the interests of all parties owning an interest in the said town, and the said six hundred and forty acres of land ; and for general relief, &c.

April 16th, 1854, Hall's heirs filed their answer, alleging that, as the heirs at law of said John W. Hall, they are the true and lawful owners of one undivided fourth of the tract of land, known as the Washington town tract.  These defendants admit the material allegations of plaintiffs' petition, except so far as it may be therein alleged that any part of their interest or their ancestor's, said John W. Hall, has been divested.  They claim and insist that their interest has not, in any legal manner, been parted with or lost, and pray that in any decree, made herein, their rights be adjudicated and their portion of said town tract, set apart and decreed to them.

Same time widow and heirs of Gay answered claiming one fourth interest and praying decree for same.  About same time Church Fulcher answered, alleging the issue of certificates of shares by the said proprietors of said town tract, of which the defendant owned thirty-three for one thousand dollars each, fifteen for five hundred dollars each and one share for two hundred and fifty dollars ; and prayed his corresponding share of the property.

October 11th, 1844, the heirs of Peter W. Grayson answered, claiming " the one eighth part of the six hundred and forty acres of land mentioned in plaintiffs' petition," and asking that the partition be made as prayed for by plaintiff.

October 12th, 1854, Richard R. Peebles answered that the original proprietors of the town of Washington, named and mentioned in plaintiffs' petition, by a resolution and action of said proprietors, made and entered into some time in the year 1839, divided the unsold lots in said town into four hundred shares, of one thousand dollars to each share, and issued certificates of stock in sums of $250, $500, $1000, of which said

certificates this defendant is the just and legal owner, to the amount of $16,250, or sixteen and one fourth shares of said unsold lots, and the said defendant has here ready to be shown to the Court, the said certificates of stock ; this defendant therefore prays that partition of said town and lots therein be made as prayed for by the plaintiff, and that the rights of this defendant be respected.

Answer of J. D. Giddings, filed without date, claiming five shares.

October 12th, 1854, the cause " coming to be heard upon the " bill and answers, exhibits and proofs, in the case, and a jury " being waived and the whole matter submitted to the Judge " of the Court for his adjudication and determination of both " the facts and the law of the case, the same was heard and " the following judgment rendered therein." The judgment then proceeded to ascertain the facts upon which it was rendered, being the same alleged in the petition, as to the original proprietors, and those to whom they sold ; it then proceeded as follows :

And it further appearing to the Court that the above named parties, as proprietors of said town, had laid off a part of said tract of six hundred and forty acres of land into streets, blocks and lots, and that they had left a part of said tract of land on the margin of the Brazos river without laying off the same into streets, lots and blocks as aforesaid, as shown by the exhibit A, (omitted by consent in making up the transcript,) filed by the plaintiff in this case ; and that said town proprietors had also proceeded to sell a large number of lots in said town, as is shown by exhibit B filed by the plaintiff in this case, and it further appearing to the Court, that afterwards the said town proprietors had divided that part of the said tract of six hundred and forty acres of land which had been laid out into streets, lots and blocks, as aforesaid, and which then remained unsold, into four hundred equal parts and issued to the said proprietors certificates of stock, representing the

four hundred parts into which the said town had been divided, &c.

It then ascertained how many of said shares each had sold, and to whom they now belonged ; also the facts about the lots that had been forfeited by purchasers failing to pay for them and then continued as follows :

It is therefore considered, adjudged and decreed by the Court, that one fourth part of the said tract of six hundred and forty acres of land, and of the streets, lots and blocks into which the same has been divided, belongs to and is the property of the said Wilson Y. McFarland ; that one eighth part of the same belongs to and is the property of the heirs of the said Peter W. Grayson ; that one fourth part of that part of said tract of land, which was not laid off and included in the said town as aforesaid, and also one fourth part of the lots which had been sold and forfeited as aforesaid, and also eighty parts of four hundred of that part of the said tract of land which had been laid off into streets, blocks and lots and remains unsold, belongs to and is the property of the said Warren D. C. Hall, William S. Hall, John W. Hall, Jr., and A. J. Hall, children and heirs of said John W. Hall, deceased ; and that one eighth part of that part of said tract of land, which was not laid off and included in the said town as aforesaid, and also one eighth part of the lots, which had been sold and forfeited as aforesaid, and also twenty parts of four hundred of that part of said tract of land, which had been laid off into streets, blocks and lots as aforesaid, belongs to and is the property of the estate of the said Edward Bailey, and that one fourth of that part of said tract of land, which was not laid off and included in the said town as aforesaid, and also one fourth part of the lots which had been sold and forfeited as aforesaid, and also ninety parts of four hundred of that part of said tract of land, which had been laid off into streets, blocks and lots as aforesaid belongs and is the property of the estate of Thomas Gay, deceased, and that Eleanor Roberts, as

the surviving widow of the said Thomas Gay, is the owner of the one half of the said interest of the said Thomas Gay ; and that George Ewing Gay, William Gay, Milam Gay, and Ann Amanda Gay, as the children .and heirs of the said Thomas Gay, own and are entitled to the other half of the interest of their said father Thomas Gay ; and that forty parts of four hundred.of that part of said tract of land, which had been laid off into streets, lots and blocks as aforesaid, remaining unsold as aforesaid, belongs to and is the property of the said John W. Middleton and Church Fulcher ; and that fifteen parts of four hundred of that part of said tract of land, which had been laid off into streets, blocks and lots as aforesaid, remaining unsold, belongs to and is the property of Richard R. Peebles ; and that five parts of four hundred of that part of said tract of land which had been laid off into streets, blocks and lots as aforesaid remaining unsold as aforesaid, belongs to and is the property of J. D. Giddings. Wherefore it is further ordered, adjudged and decreed by the Court, that O. H. P. Garrett, Thomas J. Heard, and William P. Rutledge be and they are hereby appointed Commissioners, to partition and divide the said six hundred and forty acres of land between the above named parties, giving to each that part of the said tract of land, and the streets, blocks and lots into which the same has been divided, which, according to its value, may belong to each of the said parties, according to the interest which each has therein, as adjudicated and settled by this .decree, and that said Commissioners make their report of the manner in which they have executed the duties herein assigned to them, to the next Term of this Court for its final adjudication thereon.

April 19, 1855. The report of the Commissioners was set aside, because the commission was not directed as well to the Sheriff as to said Commissioners ; and other Commissioners were appointed.

Same day, Hall's heirs filed their petition, or application as it was called by them, as follows :

And now, leave of the Court being had, come Warren D. C. Hall, Jr , William S. Hall, John W. V. Hall, and Andrew J. Hall, heirs at law of John W. Hall, deceased, and defendants in this suit, and represent to the Court that it is admitted, in the plaintiff's petition and shown in the deeds and agreements, mentioned in said petition, · that their ancestor, the said John W. Hall, deceased, was entitled to the exclusive ownership of the ferry over the river Brazos at said town of Washington; and they show that, in laying off the said town, a strip or parcel of land was left and reserved, lying between the town tract and the river, which was not laid off into lots; the strip or parcel of land being the same which lies between said river and the street known as Water street, and extends from the upper line of the said six hundred and forty acres of land to the lower termination of said Water street, and varying in width from ten to eighty varas.

Now they, the said Warren D. C., Wiliam S., John W. V. and Andrew J. Hall, express, aver and charge, that the aforesaid strip or parcel of land, was reserved and set apart by the said town proprietors to the said John W. Hall, deceased, as an appurtenance to the ferry aforesaid; and that the said John W. Hall, his heirs and assigns, alone are entitled to the ownership, use and occupation of said strip or parcel of land; and they here allege and aver that the said John W. Hall, deceased, and these parties his heirs, by themselves and their tenants, have had uninterrupted, adverse possession and occupation of said strip or parcel of land ever since the said town was laid off and established, and conseqently these parties, have title both by the agreement of said proprietors and by prescription, to the aforesaid strip or parcel of land. These parties here show that they have been informed that the Commissioners, appointed under the order of this Court to make partition or division of the land and town lots mentioned in the plaintiff's petition, proceeded to divide and partition said strip or parcel of land, amongst those parties, represent-

ing the original town proprietors, which action of the said Commissioners, had the same been received and adopted by this Court, would have been in derogation of the rights of these parties.

They therefore pray of the Court that an issue be made and submitted to the Court to try and determine their rights to the said strip or parcel of land, and they now protest against the partition of said strip or parcel of land amongst the parties to this suit, and they pray that the said strip or parcel of land be adjudged to them exclusively, and that all the parties to this suit, their heirs and assigns, be forever barred and estopped from setting up any claim or right to the said strip or parcel of land, or any part thereof.

The report of the new Commissioners was made at the Fall Term, 1855. By consent of parties, all of the report except that which related to the strip of land between Water street and the river was omitted. That part was as follows:

That, in the opinion of your Commissioners, it was not deemed advisable to incorporate the annexed report of lots into the general report of the partition and division of said town tract, as ordered in the decree of your honorable Court, they being immediately situated on and along the bank of the Brazos river, and somewhat disconnected from the remaining portion of the said town tract, which your Commissioners have already divided, there being interested in this division a much smaller number of shareholders, than in the aforesaid general division; consequently they proceeded, as stated in the proceedings of the general report, to appraise the several lots respectively, lying along the bank of the Brazos, in said town tract, as above specified, after which, they ascertained the number of shares to which each of the shareholders was entitled in lots, when Wilson G. McFarland was found to have two shares, the heirs of Thomas Gay two ; the heirs of John W. Hall two ; the heirs of Edward Bailey, one ; the heirs of Peter W. Grayson one.

The number of lots constituting a share were then placed on tickets and drawn impartially and resulted in giving, &c.

Against this report the defendants filed their protest, reiterating the averments of their application, filed April 19th, and alleging that said Commissioners had partitioned out the strip lying between Water street and the Brazos river, which they claimed as their exclusive property, because of the admissions in the petition, the allegation that the strip of land so claimed had been expressly reserved from sale by Hall as appurtenant to the ferry, &c.; and that their ancestor and these parties have had ten years peaceable and adverse possession thereof; and praying that they be quieted in their title. By an amendment they alleged that the decree was erroneous, inasmuch as it was by mistake entered without reference to the rights of said heirs of Hall to the ferry over the Brazos river, wherefore they prayed that it be corrected so as to allow and adjudge to said heirs said strip mentioned in the original application. The plaintiff excepted to the application and protest on the ground that the judgment was in strict conformity with the rights of the parties, and that the appellees were precluded by the judgment of Oct. 12th, 1854, from setting up any adverse or exclusive claim to the strip of land on the margin of the river, and from claiming any other or greater rights than were adjudicated to them in said judgment.

This exception was overruled, the case submitted to the jury, a verdict for the heirs of Hall, a decree rendered, setting aside the report of the Commissioners in the particular objected to ; revising, amending and correcting the judgment previously rendered, and rendering judgment in favor of the heirs of Hall for the tract of land lying on the margin of the Brazos river. This strip of land contained twelve or fourteen acres ; and if any other part of the six hundred and forty acres was not laid out in lots and blocks, it did not so appear from the transcript.

Motion to set aside the judgment overruled, and plaintiff appealed.

*Sayles*, for appellant, cited Cannon v. Hemphill, 7 Tex. R. 184, and Merle v. Andrews, 4 Id. 200, to the point that the decree of Oct. 12th, 1854, was final.

But it is alleged that there was a mistake in rendering said decree. How does that mistake appear? Not from the pleadings, because no other judgment could have been rendered, consistent with the pleadings. The plaintiff, and appellant, claims an interest in the whole tract of six hundred and forty acres, and the appellees set up no exclusive interest in any portion of said tract. But it is insisted that by an exhibit annexed to the petition, it was shown that appellees had such an exclusive interest. The exhibit relied on, is the following clause, appended to the act of sale and articles of association : " It is " agreed by the parties that Hall has the exclusive ownership " of the ferry," signed by the parties to the original contract. To this we answer, 1st, the reservation is of a franchise, not of land ; that by the reservation, no land passed with the ferry ; that the ownership of the ferry might be in one person and the ownership of the land in another. The ownership of the ferry was not divested from Hall's heirs by the decree, but was left undisturbed. By the conveyance or reservation of the ferry no land as appurtenant to it was conveyed or reserved. By the report of the Commissioners, the lots upon which the ferry landed were set apart and allotted to Hall's heirs, and there can be no pretence that their ferry was disturbed. If under that reservation, Hall's heirs claim an exclusive right to establish a ferry on the town tract, that question can be determined when the appellant or others seek to disturb that right by the establishment of a ferry. By no construction of language can an exclusive ownership of a ferry imply the exclusive ownership of all the land on the margin of the river, on which a ferry by possibility could be established. In considering this allegation of "mistake," we must look to the instrument itself, and its plain import.

2nd. The question as to mistake was not and could not be

raised by a protest or objection, or motion, but must have been by a bill of review.

4th. The pleadings and exhibit show there was no mistake, but that the judgment is consistent and the only judgment that could have been rendered.


*J. & A. H. Willie,* for appellees. I. We do not believe that the judgment rendered in October, 1854, taken in connection with the pleadings and record proof, was a final decree, adjudicating the rights of the parties in the land now claimed. The petition did not pretend to assert in the other proprietors any right whatever to the ferry, but on the contrary expressly admitted the right of the heirs of Hall. The answer of Hall's heirs admitted the material allegations of the plaintiff's petition, but can in no way be construed to admit away their right to the ferry. What was this ferry? We maintain that the land now claimed was appurtenant to and a part of the ferry itself. The petition alleges that a town had been laid off by John W. Hall. It speaks of the lots, blocks, &c., into which it was divided. This land upon the river had never been divided into lots, blocks and streets until it was done by the action of the Commissioners. Now, John W. Hall's heirs could not suppose that under the decree any part of the tract of land was to be divided, except that which properly belonged to the town.

So soon as it was ascertained by them that this strip of land had been subjected to division, they filed their objections to the partition, and claimed what had been in fact conceded by the petition, that they own exclusively the ferry and the land as appurtenant to it.

But if the judgment be construed to have ordered a partition of the land in controversy as a part of the town tract, it was still open to revision and amendment by the Court. It was not a final decree settling the rights of the parties. (Mc-

Key v. Bell, 2 Munf. 523 ; Seay v. White, 5 Dana, 555.) An interlocutory decree may be altered at any time before final decree. (Cook v. Berry, 4 How. Miss. R. 485.)

A judgment entered by mistake is subject to revision and correction at any time, by a proceeding in the case itself. (Garner v. Strode, 5 Littell, 315.) As between the parties themselves, the judgment may at any time be amended. (Crutcher v. Com. 6 Wharton, 340.) In a case of partition, the Court should retain jurisdiction over the case and parties until the final report of the Commissioners, for the purpose of fairly adjudicating the rights of the parties. (Seay v. White, 5 Dana, 555.) A pretermitted matter of defence is to be tried as an issue in the case itself. (Gallup v. Reynolds, 8 Watts, 424.)

In the Court below, the case of Cannon v. Hemphill, 7 Tex. R. 184, and of Merle v. Andrews, 4 Tex. R. 200, were relied upon as authority in favor of the position that the judgment of October, 1854, was conclusive and finally settled the rights of the parties.

There is a material distinction between the first above named case and the present. In that case suit was brought to set aside a decree made more than two years before the filing of the suit. A decree entered by consent of the parties and which went so far as to settle even the costs.

The case of Merle v. Andrews also differs widely from the present. It was an action brought to compel the defendant to account, as administrator of an estate, for certain property and money received by his intestate, for the use and benefit of the plaintiff. Every matter was settled by the first decree, except as to an unadjusted balance of money claimed. The District Court annulled and wholly vacated the decree some four years after its rendition. The present suit was for partition. The application was to correct an error and rectify a mistake made in entering a decree by reason of which, land not even claimed by the other parties to the suit was adjudged to them.

---

---

WHEELER, J. The principal question upon this appeal is, whether the decree of the 12th of October, 1854, was final and conclusive of the matters therein adjudicated. It certainly determined all the issues of fact raised by the pleadings ; it distinctly ascertained and adjudicated the rights of the parties ; and settled definitively their respective interests in the subject matter of the suit. It put an end to all matter in litigation in the case. After it was rendered, nothing remained but to carry it into effect, or execute the judgment of the Court. This would seem to bring it within the legal definition of a final judgment. It is not perceived that there is, in this respect, any substantial distinction to be taken, between the present case and the case of Cannon v. Hemphill, (7 Tex. R. 184,) where the decree was held by this Court a final decree. It was there said, " In the decree under consideration, " the respective shares of the parties in the land were decreed ; " the costs were ordered to be paid ; and Commissioners were " appointed to divide the land, in conformity with the decree. " Although, as matter of convenience, it might be expedient to " hold that appeals from such decrees should not be permitted " until action is had upon the report of the Commissioners, yet " the merits of the case are certainly determined by the decree, " and the rights of the parties concluded ; nor should such de- " cree be controlled or revised, unless upon appeal or writ " of error. The only question that could properly arise, " on the report of the Commissioners, would be, as to the con- " formity of the division with the rules settled by the decree, "and such as would arise upon the acts of the Commission- " ers." (Id. 196–7.) There is one consideration adverted to in the Opinion, which is peculiar to our law of procedure, that is, that the trial of the issues of fact may be by jury. And where, as in this case, a jury is waived, and the Court is substituted for the jury in deciding upon the issues of fact, the decision has the same conclusive effect assigned to it, as the verdict of a jury. It would scarcely seem compatible with this mode of

McFarland   v.   Hall.

trial, that, a decree rendered upon a verdict, in a case of equi-
table cognizance, should have a less conclusive effect than a
judgment in a case of legal cognizance.   The verdict is equal-
ly conclusive of the facts in either case ; the decree, or judg-
ment, is but the legal consequence of the establishment of the
fact; and it should make no difference, it would seem, in re-
spect to the finality and conclusive effect of either, that their
manner of execution may be different.

That the costs were not adjudged in this case can make no
difference.   Costs may be awarded either by an interlocutory
or final judgment.   The judgment is not the less final, as re-
spects the rights of the parties, which it adjudicates, because
the disposition of the costs was reserved until after the report
of the Commissioners.

As the decree disposed of the issues, and settled, definitive-
ly, the rights of the parties, it was not subject to revision, in
the same Court, at a subsequent Term, unless for causes which
would authorize a new trial or review. (Merle v. Andrews, 4
Tex. R. 200.) If the appellees had shown sufficient matter, in
opposition to the decree, to entitle them to have it set aside
after the Term, and to a review, or new trial, upon the mer-
its, the form of the proceeding would not be material.   While
the parties were before the Court, for any purpose, a new ori-
ginal· petition or proceeding was unnecessary.   The party
might state their grounds for a new trial or review in the
mode here pursued, as well as by a new independent proceed-
ing.   But there manifestly are no sufficient grounds disclosed
to entitle the party to have the judgment of a former Term
set aside or reviewed.

The decree conformed to the allegations of the parties.   The
petition averred that a portion of the town tract was not sur-
veyed, or laid out into streets, &c., and the decree ascertained
and decides that the particular strip of land, in question, was
not so surveyed and laid off, and adjudges it subject to the par-
tition sought by the petition.   The appellees, in their answer,

set up no exclusive right in this strip of land. They made no objection to the decree, by which it was adjudged to be partitioned. They do not show any error, or mistake in the rendition of the decree. It was the only decree which the Court could legally render, upon the case, which they, by their pleadings, had submitted to the Court for adjudication. The only ground really presented for setting it aside, is, that the appellees did not ask of the Court as favorable a decree as, upon the facts within their knowledge, outside of the record, they might have asked. If this would be a sufficient ground to re-open the judgment of a former Term, there would never be an end of litigation.

The decree makes no disposition of the ferry ; but no disposition was sought to be made of it ; it remains the exclusive property of the appellees. The ferry does not necessarily include the proprietorship of the lands adjacent to its landings. It is a franchise, which, in general, has its termini at the water's edge. (15 Pick, 254 ; Bouv. L. Dic. tit. FERRY.) But the decree does dispose of the land now claimed by the appellees ; to which they did not then assert any exclusive claim ; but which claim, if they intended to assert it, they should have asserted when the right and title of the parties were the question before the Court for adjudication. If the Court had erroneously decided against their claim of right, the decree would not be the less final and conclusive, until reversed on error ; or set aside in a proceeding for that purpose. To maintain such a proceeding some sufficient legal cause must be shown. There is none disclosed by the record ; and we are therefore of opinion that the Court erred in its judgment, setting aside the decree, and retrying the case anew upon new issues, after the Term, instead of confining its action to the report of the Commissioners, and matters arising therefrom ; for which the judgment must be reversed and the cause remanded.

Reversed and remanded.