POWELL, P. J.
The nature and result of this cause have been accurately state'd, in part, by the Court of Civil Appeals, as follows :
“This suit was instituted by the Vacuum Oil Company against the Liberty Refining Com; pany to recover damages for breach of contract".
“Plaintiff charged that defendant was insolvent, that its property was heavily incumbered by deeds of trust and other liens, and asked that a receiver be appointed, which was done, as also a master in chancery.
“Numerous creditors intervened, among them the parties to this appeal, the Keystone Pipe & Supply Company, appellant, and ’the Cisco Banking Company, appellee.
“The master in chancery was authorized by the order of the court appointing him ‘to pass upon the validity of all claims presented against the Liberty Refining Company and the validity of all liens against its property,’ and in his rep<?rt to the court to ‘separate those claims secured by a valid lien and those not so secured.’ The master in chancery filed his report as above indicated and further undertook to determine the priority of the liens so found, and declared that the appellee’s claim for $52,486.98 was a prior lien to that of appellant for $1,469.19.
“The trial court, upon this report being presented to him, entered the following order: ‘And the court being fully advised in the premises, and it appearing to the court that there were objections raised to said final report, the court, after hearing the argument of counsel on the objections urged to said report, and being fully advised in the premises, is of the opinion that said report should in all things be sustained and approved. It is therefore ordered,’ adjudged, and decreed by the court that said final report of the master in chancery be and the same is hereby in all things sustained and approved.’
“The appellant ánd others excepted to this order as if it were a final judgment, and gave notice of appeal. The matter is before this court upon writ of error.”
The Court of Civil Appeals, upon its own motion, dismissed the cause, holding itself without jurisdiction to entertain the same since, in its opinion, the order appealed from was not a final judgment. See 247 S. W. 597.
Plaintiff in error contends that the cause was erroneously dismissed by the Court of Civil Appeals and presents, in this connection, the following assignment of error:
“The Court of Civil Appeals for the Eighth Supreme Judicial District of Texas erred in holding that it was without jurisdiction to entertain, hear, and determine the issues involved in this cause, on the ground that the order and judgment of the district court from which the writ of error was prosecuted was not a final judgment, ■ because the report of the master in chancery, fixing the order of priority of the payment of the claims of your petitioner and that of. the Cisco Banking Company was a final adjudication of the issues between these two interveners and left nothing further to be done by the court in fixing and determining their respective rights in respect to the issues involved between them.”
Aforesaid assignment is followed by the following proposition:
“The cause and issue between petitioner and the Cisco Banking Company being determined on its merits, by the order and judgment of the district court in approving and confirming the report of the master in chancery, the judgment is final, although ulterior proceedings may be necessary to carry the judgment into effect.”
Counsel then cite the following authorities in support of their aforesaid assignment and proposition thereunder: White v. Mitchell, 60 Tex. 164; Cannon v. Hemphill, 7 Tex. 184; Patrick v. Gibbs, 17 Tex. 275; McFarland v. Hall’s Heirs, 17 Tex. 676; Renn v. *1019 Samos, 42 Tex. 104; Linn v. Arambould, 55 Tex. 611; Rogers v. Dickson (Tex. Civ. App.) 176 S. W. 865; Waters-Pierce Oil Co. v. State, 107 Tex. 1, 106 S. W. 326.
After carefully reviewing the authorities cited, and many others, we have reached the conclusion that this was such a final judgment as authorized this appeal, and that the Court of Civil Appeals should not have dismissed the case. We think it well to review some of the authorities upon this point.
In the case of Cannon v. Hemphill, 7 Tex. 184, Chief Justice Hemphill says:
“In the decree under consideration, the respective shares of the parties, in the land, were decreed; the costs were ordered to be paid;, and commissioners were appointed to divide the land, in conformity with the decree. Although, as matter of convenience, it might be expedient to hold that appeals from such decrees should not be permitted until action is had upon the report of the commissioners, yet the merits of the case are certainly determined by the decree, and the rights of the parties concluded; nor should such decrees be controlled, or revised, unless upon appeal or writ of error. The only question which could properly arise; on the report of the commissioners, would be as to the conformity of the division with the rules settled by the decree, and such as would arise upon the acts of the commissioners.”
The aforesaid judgment was held to be a final one. The court, in its opinion, went on to say:
“Having determined that this entry constitutes a judgment, and is not a mere unofficial agreement, the next inquiry is as to its rank or quality, whether it be interlocutory and entirely within the subsequent control of the court, or whether it be final in its nature, and conclusive on the rights- of the parties, if not reversed in the ordinary processes of revision, prescribed by the law.
“The character of the judgment must be tested by its operation on the objects sought to be attained by the proceeding. If the cause be determined on its merits; if the rights, controverted between the parties, be settled, the decree will be final, although ulterior proceedings, to carry the judgment into effect, may be required.”
In the case of McFarland v. Hall, 17 Tex. 676, a decree dated October 12,1854, was under consideration. In that decree certain lands were awarded in certain proportions to certain parties and commissioners of partition appointed to report at next term of court. Our Supreme Court, through Judge Wheeler, held this judgment a final one. He said:
“The principal question upon this appeal is, whether the decree of the 12th of October, 1854, was final and conclusive of the matters therein adjudicated. It certainly determined all the issues of fact raised by the pleadings; it distinctly ascertained and adjudicated the rights of the parties; and settled definitively their respective interests in the subject-matter of the suit. It put an end to all matter in litigation in the case. After it was rendered, nothing remained but to carry it into effect, or execute the judgment of the court. This would seem to bring it within the legal definition of a final judgment. It is not perceived that there is, in this respect, any substantial distinction to be taken, between the present case and the. case of Cannon v. Hemphill (7 Tex. R. 184), where the decree was held by this court a final decree.”
It seems that the judgment under consideration by Judge Wheeler did not adjudge the costs. But he held that had no effect upon its finality. In that connection he states:
“That the costs were not adjudged in this case can make no difference. Costs may be awarded either by an interlocutory or final judgment. The judgment is not the less final, as respects the rights of the parties, which it adjudicates, because the disposition of the costs was reserved until after the report of the commissioners.”
In. the case of Patrick v. Gibbs, 17 Tex. 275, the court held final the following judgment or order:
“The transcript contained a bill, subpoena for the respondent returned executed, and proceedings in a suit in equity, in said circuit court, wherein the present plaintiff was complainant,, and the defendant was respondent; an interlocutory decree, pro confesso, that the respondent was indebted to the complainant, but, inasmuch as the amount of said indebtedness was not ascertained, a reference was ordered .to a commissioner, to state the account between the parties; his report showing balance of $885.50 in favor, of the complainant, and.the following decree: ‘Be it remembered, that on the 27th day of September, A. D., 1848, came on to.be heard the above stated case of Lewellen Patrick against Stephen O. Gibbs, before the honorable circuit court of 'Tishomin-go county, Miss., upon the report of Charles W. Williams, a commissioner appointed at a former term of this court; and there being no exceptions to said report, and it appearing to the satisfaction of the court that the said Charles W. Williams, as such commissioner, has in all things justly carried out the decree of the court, made at a former term thereof, it is therefore ordered, adjudged and decreed, be, and the same is hereby approved, and in all things confirmed, and which is now signed, sealed, and ordered to be recorded this 27th day of September, A. D. 3848.’
In passing upon this order, the court says:
“The report of the commissioner appointed by the interlocutory decree, to ascertain the amount of the defendant’s indebtedness, is made a part of the record, and is confirmed by the final decree; and, looking to the whoje record, there can be no doubt of the finality of the decree, and no uncertainty as to the matter adjudged. The validity and conclusive effect of a judgment does not depend on the particular phraseology in which it is expressed. Technical formality and legal precision, it has been said, need not be preserved, if the judgment is expressed in language which is signifi *1020 cant in common understanding and parlance. 2 C. & H. N. to Phil. Ev. p. 71. ‘In the absence of statutory or other regulation (the court said in Ordinary v. McClure, 1 Bail. 7), each department of the judiciary must be left to adopt and pursue its own formula in its proceedings; because neither of them has the power to prescribe these matters for the others. With respect to matters of substance there are certain requisites,, however, which equally apply to' every jurisdiction, and without which legal proceedings would be useless and unnecessary. In addition to the ordinary circumstances of time and place, they should, for the most obvious reasons, exhibit the parties, the subject-matter in dispute, and the result. These facts being ascertained, the legal consequences follow of course, whatever be the phraseology used.”
Still further, the court goes on to say:
“Looking to the whole record, it is perfectly clear that the decree is a final adjudication of the whole matter in litigation between the parties. It ascertains with precision and certainly the amount of the defendant’s indebtedness; and nothing remains to be determined in that suit. It seems that it is a judgment which may be enforced in the state of Mississippi by •’execution, an execution having been issued upon it. That it is a final judgment will conclusively appear by reference to the opinion and decision of this court in the cases of Merle v. Andrews, 4 Tex. 206, and Cannon v. Hemphill, 7 Tex. 184.”
In the case of Renn v. Samos, 42 Tex. 104, the court, through Justicte Moore, declares:
“The receiver had made an account, to which plaintiffs had filed exception. An auditor had examined and reported upon the account. Upon trial, a verdict was rendered in favor of plaintiffs .for six hundred dollars, upon which the court rendered judgment ‘that said J. M. Wiggins receiver in cause No. 1987, wherein Benedict Renn, Sempronius Renn, Marzell Renn, Mathias Renn, Anson Stroble, and his wife, Suzina Stroble, are plaintiffs, and Wm. P. Brittain, Leopold Veeth, and Sarah Samos, executrix of the last will of E. Samos, deceased, are defendants, be required to pay, on or before the 28th day of December, A., D. 1873, to the said plaintiffs, B. Renn et al., or their attorneys of record, the sum of six hundred dollars; and should said J. M. Wiggins, receiver aforesaid, fail to pay said sum at the time mentioned, then he, the said AViggins, receiver, shall be considered in contempt of the order of this court, and said plaintiffs are authorized to put in suit his bond, and to issue scire facias to his sureties on his ófficial bond for six hundred dollars and costs.’ ”
In passing upon aforesaid order, the court held:
“It is also insisted in the motion to dismiss that there is no final judgment against the receiver. This evidently arises from a misconception o'f the legal effect and import of the judgment. As to the receiver, the judgment is a finality. He was an officer of the court, subject to its jurisdiction. It was unquestionably his duty to account to and with the court, under and by virtue of whose authority he acted. An examination of his accounts, and the determination of the amount to be paid by him into court, or to the parties adjudged by it entitled thereto, was plainly within its jurisdiction; and, as between the plaintiffs and the receiver, would be held in any proceeding against him with like purpose in any other case, res adjudicata. The court might, no doubt, have enforced payment of the amount found against the receiver by execution, or imprisonment for contempt, if he failed or refused to pay the amount for which he was chargeable, in obedience to its order. The fact that a less stringent and efficacious remedy for its collection was given the plaintiffs than either of these, does not deprive the judgment of its character of finality. It is not by reason of the order that execution may issue that the judgment becomes final, but execution is ordered because the judgment is final.
“The other grounds presented in the motion to dismiss are not such as require any special comment. The motion to dismiss is accordingly overruled.”
In this same case, Judge Moore states the rule splendidly as follows:
“The matters which we are now asked to review and determine are mere incidents to the original suit, and grew out of proceedings had by way of motions and plaints made in it and the action of the court upon them. In these proceedings the defendants to the suit have no interest. They involve the rights and liabilities of the plaintiffs to the suit and the parties by and against whom they were had. Although they were incident to and grew out of the suit between the plaintiffs and defendants, and may, therefore, very properly be entitled and treated, in one sense, as part and portion of said suit, yet they are sufficiently independent and separate from it to warrant either of the parties whose rights and interests are affected by the ruling of the district court to bring the same to this court for review. The appellate jurisdiction of this court is not limited to the final judgments of the district court, in actions or suits, in the technical meaning of these terms. It extends to its final judgment in ‘all manner of pleas, plaints, motions, causes, and controversies,’ in and by which the rights of person and property of the parties to them may and have been finally determined.”
In the case of Linn v. Arambould, 55 Tex. 611, the court quotes with approval from Ereeman on Judgments, as follows:
“A decree can never be final until the party in whose favor it is can obtain some benefit therefrom without again setting the cause down for further hearing before the court, upon the equity reserved upon the coming in and confirmation of the report of the master, to whom a reference has been made (here the reference is to a court and jury on another trial), to ascertain facts which are absolutely necessary to be determined before the case can be finally disposed of by the court, or which the chancellor thinks proper to have ascertained before he grants any relief. But if the questions which can arise oh the exceptions to the master’s report are such as are merely incidental to the carrying of the decree into effect, it is final.”
*1021 Again, in ttte same case, the court quotes the following from the same author:
“Owing to the number of orders or decrees necessarily, entered in a suit in equity to furnish all the relief to which the complainant may be entitled, the courts have been frequently obliged to determine which is the final decree. So far as any general distinguishing test can be gathered from the numerous decisions, it is this: That if, after a decree has been entered, no further questions can come before the court, except such as are necessary to be determined in carrying the decree into effect, the decree is final.”
This case of Linn v. Arambould is a very thorough discussion of the finality of judgments authorizing an appeal. The general principles are first discussed. Then the court goes on to speak as follows:
“The general rules and principles before laid down in this opinion seem to encounter no qualification or exception under the record presented to us, whether the judgment be one rendered either at law or in equity. There exist none of the special elements here, which make it necessary to notice the various rules which seem to be established by the cases referred to by Mr. Freeman. The cases of Cannon v. Hemphill, 7 Tex. 184; McFarland v. Hall, 17 Tex. 676; Merle v. Andrews, 4 Tex. 400; Hermon v. Bynum, 40 Tex. 324, are examples of similar cases and questions to those referred to, and go to show that where the rights of the parties are fully adjudicated the finality of the judgment is not converted into one merely interlocutory, by connecting it with something further to be done, or which may be done; there is nothing in this case presenting any such questions.”
The rule laid down in this ease of Linn v. Arambould was expressly recognized by this section of the Commission of Appeals in the case of Leyhe v. McNamara, 243 S. W. 1074.
The latest expression by our Supreme Court with reference to the authorities we rely upon herein is found in its approval of the judgment recommended by Section A of the Commission of Appeals in the case of Ware v. Jones, 250 S. W. 663. This was an oirfnion by Presiding Judge Gallagher and written just one year ago, and shortly after the writ of error was granted by the Supreme Court in the case at bar. In his opin•ion, Judge Gallagher states the rules correctly, as follows:
“A ‘final judgment’ is one which awards the judicial consequences which the law attaches to the facts and determines the controversies between the parties over the subject-matter. It terminates the litigation of the parties on the merits of the case so that nothing remains to be done but to execute it according to its terms. Hanks v. Thompson, 5 Tex. 6, 8; West v. Bagby, 12 Tex. 34, 62 Am. Dec. 512; Grant v. Insurance Co., 106 U. S. 429, 430, 431, 1 Sup. Ct. 414, 27 L. Ed. 237 ; 3 C. J. 441.
“However, if the rights controverted by the parties be settled by the judgment, it will be held final, although further proceedings should be required to carry the judgment into full effect. Such proceedings may be expressly provided for in the face of the judgment without, affecting its finality, provided they are merely incidental to its proper execution. Cannon v. Hemphill, 7 Tex. 184, 194; Merle v. Andrews, 4 Tex. 200, 207-211; Redus v. Burnett, 59 Tex. 576, 577, 578, 581; McFarland v. Hall, 17 Tex. 676, 690, 692; Shannon v. Taylor, 16 Tex. 413, 419; Harmon v. Bynum, 40 Tex. 324, 331, 332; White v. Mitchell, 60 Tex. 164; Beene v. National Liquor Co. (Tex. Civ. App.) 189 S. W. 86; Zappettini v. Buckles, 167 Cal. 27, 138 Pac. 696, 698.”
Under the second principle announced, Judge Gallagher held the judgment in question final in its sufficiency to authorize and support an appeal.
In order that a more definite statement of the status of the parties, as shown by the record, may be before the court, we quote as follows from the petition for writ of error:
“This was an action brought by the Vacuum Oil Company against Liberty Refining Company for the recovery of damages alleged to have resulted from a breach of contract and for the appointment of a receiver to take charge of the property and assets of the defendant. (Tr. pp. 3-11.) Receivers were appointed as prayed for. (Tr. p. 12.) A master in chancery was also appointed to pass upofi the validity of the claims and priority of liens asserted by the creditors of the defendant. (Tr. p. 13) Numerous creditors intervened in the cause, among whom were the Cisco Banking Company, Keystone Pipe & Supply Company, J. M. Rockwell, Southwestern Mechanical Company, and several other claims, among them claims for labor done and performed for the defendant. The claim of the Cisco Banking Company was based on a note for the sum of $52,486.98, with interest and attorney’s fees. It was contended by this intervener that its claim, being secured by a mortgage on the plant of the defendant, was entitled to priority in the payment over all other claims, by reason of its lien. The claim of the Keystone Pipe & Supply Company for priority of its claim for $1,601.57 was based on a material-man’s lien for (naterial alleged to have been furnished the defendant, Liberty Refining Company, for making betterments, additions, and extensions to and improvements on its oil-refining plant and increasing the capacity thereof, the effect of which was to enhance and increase the security of all prior lienholders. (Tr. pp. 32-44.) The property and assets of the Liberty Refining Company were sold by the receivers for the sum of $65,000 (Tr. pp. 78-85) and this sale was approved by the court. (Tr. pp. 86-89.) By the report made to the court by the master in chancery the claim of the Cisco Banking Company was allowed for. the sum of $59,515.86, and the claim of the Imperial Refining Company, one of the interveners, was allowed for $35,083.60, and by the report the claims of the Cisco Banking Company and the Imperial Refining Company, and also certain labor claims aggregating $1,886.50, were given priority over the claim of your petitioner, which was allowed and approved by the master in *1022 chancery for $1,469.19. (Tr. pp. 92-94.) The effect of giving the claims referred to priority :in the order of payment over the claim of your petitioner was to deny your petitioner the right to participate in the proceeds of the funds in the hands of the receivers, resulting from the sale of the property and assets of the defendant, Liberty Refining Company. * * * This report was filed February 9, 1921 (Tr. p. 100) and your petitioner duly excepted to so much of the master in chancery’s report as denied preference in the payment of its claim over the claim of the Cisco Banking Company. (Tr. pp. 113-119.) On March 21 the trial court approved the report of the master in chancery and made it the judgment of .the court (Tr. pp. 101-111), to which judgment and order the Keystone Pipe & Supply Company in open court duly .excepted and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas.. (Tr. p. 111.) Judgment was rendered in favor of the Keystone Pipe & Supply Company against the Liberty Refining Company for the sum of $1,469.19, with interest from January 1, 1921, at the rate of six per cent, per annum. (Tr. p. 124.) The Keyston Pipe & Supply Company filed a petition for writ of error to' the Court of Civil Appeals for the Second Supreme Judicial District of Texas (Tr. pp. 125-12S), and removed the cause to the Court of Civil Appeals for the Second Supreme Judicial District of Texas at Fort Worth, from which court it was by the Supreme Court transferred to the Court of Civil Appeals for the Eighth Supreme Judicial District of Texas at El Paso, Tex.”
It will be seen from this last quotation, which accurately reflects the record, that plaintiff in error’s alleged rights were decreed away from him fully and absolutely, that the order of the court approving tie master’s final report meant and could only mean that its claim was absolutely worthless. If- the claim of the Cisco Banking Company was really superior to its claim, then it had no rights. It was shut out. The court, by a -solemn decree, had said the banking company’s claim was superior to that of plaintiff in error and must be paid first out of the proceeds of the property in the hands of the receiver. So far as the record^ discloses, the relative standing of these two claims was the only controverted issue between the parties to the cause in the district court. The final report of the master, formally approved by the order of the court, settled this question. Any further proceedings assessing costs, authorizing executions, or any other such incidental matter, are of no particular importance to the parties to this appeal. We think plaintiff in error had the right to have the Court of Civil Appeals pass upon the correctness of. the action of the trial court in ruling against it on the order of its participation in the’ funds in the hands of the receiver. Plaintiff in error had no other remedy.-
The order of the court, in the case at bar, is practically identical with that approving the special commissioner’s report in the case of Patrick v. Gibbs, supra. The effect of the order meets the test laid down in the various authorities heretofore quoted by us. The report of the master, and the order of the court confirming it, certainly met the (est stated by our Supreme Court in that they “exhibit the parties, the subject-matter in dispute, arid the result.” And, these things being true, “the legal consequences follow of course, whatever be the phraseology.” The fights of the parties to this appeal and their property were, by the order of the court, finally determined. When that io true, as stated by our Supreme Court in Renn v. Samos, supra, the right of appeal attaches. In many cases cited by us, judgments were held to be final where commissioners of partition were yet to report. Such judgments being final, it seems clear to us that there is no reason why the judgment in the case at bar should not be held final. In the instant case, any further proceedings are purely incidental and administrative.
The Court of Civil Appeals correctly held that the mere report of a master in chancery or referee is simply equivalent to a verdict of a jury and becomes the basis only for a judgment. It "must be vitalized by a judgment of the court before it becomes a judgment. It cited authorities in support of that holding. But, in stating that the very order of the court, in the instant case, was not a final judgment,, no authority was cited by .the Court of Civil Appeals. The court discusses the matter very briefly, and,we think such discussion is in conflict with the Supreme Court authorities we have heretofore reviewed.
Tinder the various authorities of our SÚ-preme Cdurt, we think this appeal should have been entertained and not dismissed. We think it should now be reinstated by the Court of Civil Appeals and considered upon its merits. The parties to the case apparently desire that it be passed upon on its merits. We find nothing in the papers indicating that defendants in error object to a reinstatement of the cause. They have filed no answer to the petition for writ of error nor any argument or brief in this court at any time.
The briefs.by the parties to this appeal contain several interesting assignments.' When a case has been improperly dismissed by the Court of Civil Appeals, the proper practice is to remand it to that court for reinstatement and consideration upon its merits. See Bomar v. West, 87 Tex. 299, 28 S. W. 519; Frank v. Tatum, 87 Tex. 204, 25 S. W. 409; Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161; McKenzie v. Withers, 109 Tex. 255, 206 S. W. 503; Tennison v. Donigan (Tex. Com. App.) 237 S. W. 229; Blalock v. Slocomb (Tex. Com. App.) 245 S. W 648.
Feeling that the order of the court in the case at bar was a final judgment authorizing an appeal, and in view of the practice as just stated, we recommend that the judg *1023 ment of the Court of Civil Appeals herein be reversed, and this cause remanded ,to that court, with instructions to reinstate the same and consider it upon its merits.
CURETON, O. J. Judgment of the Court of Civil Appeals reversed, and cause remanded to the Court of Civil Appeals, as recommended by the Commission of Appeals,