**BLACKMAN et al. v. BLACKMAN.**

No. 13901.

Court of Civil Appeals of Texas. Fort Worth.

April 21, 1939.

Rehearing Denied May 19, 1939.

434

Lacy, Price & Williams and Wynne & Wynne, all of Longview, and Fred V. Hughes, of Tyler, for appellants.

Hurst, Leak & Burke, of Longview, for appellee.

DUNKLIN, Chief Justice.

On November 6th, 1931, J. M. Blackman recovered a judgment in the District Court of Gregg County, in Cause No. 123–B on the docket of that court, against Wylene Blackman, a minor, represented by a guardian ad litem, appointed by the court, for title and possession of a tract of land, situated in Gregg County, described in the judgment as follows:

"All that certain tract or parcel of land, lying and being situated in Gregg County, Texas, a part of the W. P. Chism H. R. Survey, and being fifty (50) acres off of the East side of 143 acre tract of land described in a deed from Jack Blackman to J. M. Blackman, bearing date August 6th, A. D. 1892, and recorded in Vol. M., on pages 55–6, Deed Records of Gregg Coun-

ty, Texas, and to which reference is here made for description. It is understood and agreed, however, that the 7.73 acres heretofore sold to H. E. McNeeley and 9.53 acres heretofore sold to John Douglass off of the North side of said 143 acres is hereby reserved, and that the fifty (50) acres herein conveyed is off of the east end of the remaining 125.74 acres of the 143 acre tract of land conveyed to T. D. Blackman by J. M. Blackman on December 4th, 1920, which said deed now appears of record in Deed Records of Gregg County, Texas, in Vol. 41, page 596, to which reference is here made."

The suit now before us was instituted in the District Court of Gregg County, docketed as No. 9900–B, by Wylene Blackman, through her duly appointed guardian, Roy Thomas, on May 6th, 1936, in the nature of a bill of review, to set aside the aforesaid judgment and to re-open said cause, on the ground of fraud on the part of J. M. Blackman in its procurement. The relief prayed for in the petition was as follows:

"1. That the judgment entered in said Cause No. 123–B, styled J. M. Blackman vs. Wylene Blackman et al, be set aside and held for naught.

"2. That this cause and said cause No. 123–B be consolidated and the court proceed to hear the same upon the merits.

"3. That upon hearing hereof, judgment and decree be entered, setting aside said judgment in cause No. 123–B, and decreeing that the said J. M. Blackman take nothing by his suit and that plaintiffs recover, for the use and benefit of the plaintiff, Wylene Blackman, title and possession, against the defendant, of said lands and premises and all costs of suit.

"4. That in the alternative or event that the said J. M. Blackman has disposed of said lands and premises or the mineral interest therein, or any part thereof, or placed it beyond the reach of plaintiffs, then plaintiffs recover for the use and benefit of said plaintiff, Wylene Blackman, damages in the sum of One Hundred Thousand ($100,000.00) Dollars, together with such additional amount as the facts may show the said J. M. Blackman has collected by way of oil, gas and mineral runs from said lands and premises and that an accounting therefor be had.

"Plaintiffs further say that they have and receive such other and further relief in law and equity to which they may be justly entitled."

The case was tried before a jury, and at the conclusion of the evidence offered by the plaintiffs, in the absence of any evidence offered by the defendant, the court gave a peremptory instruction to the jury to return a verdict in favor of the defendant, and this appeal is prosecuted from the judgment rendered upon the verdict returned in obedience to that instruction.

This is said in the brief for the appellee: "The appellant is the granddaughter of the appellee, and both are negroes."

The evidence offered by the plaintiff was all documentary, with the exception of one witness, Sally Robinson, whose testimony was as follows:

She had lived in Gregg County all her life; had known J. M. Blackman and T. D. Blackman, his son, all their lives; also his wife, Jessie Blackman, ever since she married T. D. Blackman; knows the location of the 50 acres of land in controversy here; remembers the occasion of the purchase of that land by T. D. Blackman from his father, J. M. Blackman; she had farmed that land before and after such purchase; while T. D. Blackman lived, she paid the rent on that tract to him; remained on the land after his death, and paid the rent therefor to his widow, Jessie Blackman, and J. M. Blackman; after her husband's death, Jessie Blackman lived in the house with J. M. Blackman, on his farm, until the oil boom; after the oil boom, she moved into her house on the land in controversy, which she had built subsequent to the death of her husband, T. D. Blackman, and lived there until her death, in 1935; the new house she had built on the land was about one-fourth of a mile distant from J. M. Blackman's house, and on the same road; her new house was built quite a little while after the oil boom started; Wylene Blackman, the minor plaintiff, is the only surviving child and heir of T. D. Blackman and Jessie Blackman; before she worked on T. D. Blackman's land, she cultivated a part of J. M. Blackman's farm, and paid the rent therefor to him.

Witness further testified that T. D. Blackman died in 1926; since his death she had seen Jessie Blackman, his widow, practically every day; J. M. Blackman is now living on his own place, which is different land from the land in controversy, and was living there at the time of T. D. Blackman's death. Witness is not related to Jessie

Blackman; can neither read nor write. T. D. Blackman and Jessie Blackman were married October 25th, 1917; shortly thereafter, they moved onto the land in controversy, and continued to live on it until the death of T. D. Blackman.

The documentary evidence introduced by the plaintiffs consisted of the following:

Patent from the State to William P. Chism, to one league and labor, which embraced the land in controversy, dated April 4th, 1848.

Deed from Jack Blackman to J. M. Blackman, dated August 6th, 1892.

Warranty deed from J. M. Blackman and wife, Mary J. Blackman, to T. D. Blackman, of date December 4th, 1920, to the 50 acres of land in controversy, and described above; the consideration expressed in the deed being $1,800 paid and secured to be paid by T. D. Blackman, as follows: $300 cash and 4 certain vendor's lien promissory notes, payable to J. M. Blackman or order, at Kilgore, Texas; note No. 1 being for $450, due November 1st, 1921; note No. 2 for $450, due November 1st, 1922; note No. 3 for $350, due November 1st, 1923; and note No. 4 for $300, due November 1st, 1924; with vendor's lien retained against the property, to secure the payment of the notes, acknowledged by J. M. Blackman and Mary J. Blackman, in statutory form, filed for record in the Deed Records of Gregg County, Texas, January 20th, 1931, and duly recorded.

Application to the County Court of Gregg County, by J. M. Blackman, signed by his attorneys, reading as follows:

"The State of Texas, County of Gregg. In the County Court of Gregg County, Texas. In Vacation.

"To the Honorable Judge of said Court:

"1. Now comes J. M. Blackman, who resides in Gregg County, Texas, and shows to the court that Wylene Blackman is a minor, residing in Gregg County, Texas, without any lawful guardian of her estate.

"2. That said minor is entitled to an estate of real property, which is situated in Gregg County, Texas, of the probable value of Five Hundred Dollars, and that the interest of said minor and her estate require the immediate appointment of a guardian of her said estate.

"3. That this applicant is in no way disqualified and is a proper person to act as guardian of the estate of said ward.

"Wherefore, he prays that notice of his application be given as required by law, and that he be appointed guardian of the estate of said ward."

On the 16th of October, 1930, the county judge, in vacation, granted that application, and appointed J. M. Blackman temporary guardian, and he qualified as such, by filing the bond required and oath prescribed by statute. On the same day the temporary guardian so appointed filed an inventory and appraisement, in which the property of the minor was listed as follows:

"A one-half undivided interest in and to the following described tracts of land or parcels of land, towit: 100 acres of land situated in Gregg County, Texas, being a part of the Wm. P. Chism H. R. Survey, value $700.00. Subject to an indebtedness of about $500.00. 50 acres of land situated in Gregg County, Texas, being a part of the Wm. P. Chism H. R. Survey, value $500.00; subject to an indebtedness of about $200.00. Personal estate, none."

That inventory and appraisement, which was duly verified by the guardian and the appraisers, was filed and was later duly approved by the county judge, on October 17th, 1930.

On December 18th, 1930, the guardian filed in the county court an application, alleging that the minor owned an undivided one-half interest in the property, which is described in his deed to T. D. Blackman, which was reputed to be mineral land, and praying for an order authorizing him to execute mineral leases for oil and gas thereon. The application was duly verified by J. M. Blackman. On the same day, towit, October 18th, 1930, the county judge set down the application to be heard December 27th, 1930. The guardian then gave notice by publication in a newspaper in Tyler, Texas, that his application for authority to execute mineral leases on the land would be heard on December 27th, 1930, the time appointed by the court, and return of the notice so given was duly filed in the Records of the Guardianship, all in statutory form.

On December 27th, 1930, J. M. Blackman, as guardian, executed an oil and gas lease on the land in controversy here, describing it as being the same land as deeded by him to T. D. Blackman on December 4th, 1920. That lease was made to J. W. Barton and was in the usual form of a commercial lease, covering a period of 10 years, and providing for the payment of

one-eighth royalty of the oil and gas produced.

Also, on the same date, towit, December 27th, 1930, he executed another oil and gas lease, purporting to be made by himself, as guardian, and also Jessie Blackman, the widow of T. D. Blackman, on a tract of 100 acres, which is not the land in controversy here, to the Shell Petroleum Corporation, but that lease was signed by the guardian only, and not by Jessie Blackman. The consideration expressed in the lease was $1,500 in hand paid, and the usual one-eighth royalty, running for a period of 10 years.

On the same day, towit, December 27th, 1930, those leases were duly approved by the county judge of Gregg County, by an order entered in vacation.

On January 26th, 1931, an order was entered by the county judge, making the temporary appointment of J. M. Blackman as guardian, permanent.

On February 9th, 1931, the guardian filed in the county court an application for authority to sell one-half of the mineral rights of the minor in and to the 50 acre tract of land in controversy, and also of the other 100 acres of land above mentioned. In that application, it is alleged that the ward owned an undivided one-half interest in both of those tracts, and was duly verified, after advertisement of notice of that application had been duly made.

On April 4th, 1931, J. M. Blackman executed to the Smith-Clark Co., of San Antonio, a deed of conveyance to an undivided one-eighth interest of all the oil royalty and gas rental or royalty due and to be paid to the minor on the land in controversy, describing it as the land conveyed by J. M. Blackman to T. D. Blackman on December 4th, 1920. The consideration for that lease was $1,093.75. And on the same day of its execution, an order was made by the county judge, duly approving and confirming the sale.

On April 4th, 1931, the guardian, J. M. Blackman, executed another deed of conveyance to J. G. Townes, to one-eighth of the mineral interest in the undivided interest owned by the minor in the land in controversy. On the same day, towit, April 4th, 1931, the county judge entered an order, in vacation, approving and confirming the sale. The consideration recited in that conveyance was $1,250 cash paid. Notice of the application for said sale was duly published, as required by the statute.

On August 3rd, 1931, the guardian made application to the county court for leave to grant the Illinois Pipe Line Co. the right to lay a pipe line across the land in controversy, giving the same description as was given in his deed to T. D. Blackman on December 4th, 1920, and alleging that the minor owned one-half interest in the property. It does not appear that the county judge ever acted on that application.

On August 31st, 1931, this order was filed by the county judge of Gregg County:

"It being made known to the court that J. M. Blackman, who is the present guardian of the estate of said named ward, owns and claims an interest in the subject matter of the estate of said named ward, the court is of the opinion that the said J. M. Blackman should be removed as guardian of the estate of said named ward:

"It is therefore the order, judgment and decree of this court that the said J. M. Blackman be, and he is hereby removed as guardian of the estate of the said Wylene Blackman, a minor, and is directed to make a final report to this court within ten days from the date hereof."

On September 12th, 1931, Jessie Blackman, the mother of the minor, filed an application for appointment as guardian of the estate of the minor, alleged to be six years of age, and reciting that the minor was entitled to real estate in Gregg County of the probable value of $2,500, and personal property of the probable value of $200. On September 28th, 1931, that application was heard, and Jessie Blackman was appointed guardian of the estate of Wylene Blackman, as prayed for. Jessie Blackman then duly qualified as such guardian, by filing the bond and oath required by statute.

On the same day, towit, September 28th, 1931, the court entered an order approving the final account of J. M. Blackman, as guardian, reciting that the same showed $3,209.24 belonging to the ward and in the hands of J. M. Blackman, and decreeing that he would be fully discharged as guardian upon delivery of said sum of money to Jessie Blackman, as guardian; and on the same day, another order was entered, reciting that J. M. Blackman had turned over said sum to Jessie Blackman, and that he was then finally discharged as guardian.

On April 3rd, 1935, an order was made by the county judge, granting to Jessie Blackman, as guardian of the estate of Wylene Blackman, authority to invest $4,500 of money on hand belonging to the ward, in water works and sewerage bonds of the City of Overton.

On October 14th, 1931, 16 days after approval of his final account, J. M. Blackman filed suit in the District Court of Gregg County, against Wylene Blackman and Jessie Blackman, as guardian of her estate, docketed as Cause No. 123-B, in trespass to try title to recover the title and possession of the 50 acres in controversy, describing it as the land conveyed to T. D. Blackman by J. M. Blackman, on December 4th, 1920. In that petition it was alleged that on January 1st, 1931, plaintiff was the owner of the fee simple title to said land and in possession thereof, and on that date the defendant unlawfully entered upon and dispossessed him of same, with the further prayer for recovery of $500, rental value thereof during the eleven months next preceding the filing of the suit.

The record in that case shows issuance and service of citation on the minor and on Jessie Blackman, as guardian of her estate.

Appointment by the court of an attorney as guardian ad litem for the minor, on November 6th, 1931, and answer filed by him as such guardian ad litem, consisting of a general demurrer, plea of not guilty and general denial; answer in like terms filed by Jessie Blackman, as guardian of the estate of the minor.

The record of that case further shows that on November 6th, 1931, the same day of the appointment of the guardian ad litem, the court heard the case, and decreed title in the plaintiff, J. M. Blackman, to the land in controversy, as against the minor, reciting in the decree appearance of all parties in person and by their attorneys, including the guardian ad litem theretofore appointed.

A statement of the evidence introduced upon that hearing was filed in the records in that case, which may be briefly summarized as follows:

Agreement of the guardian ad litem to introduce abstract of title of the property involved, in lieu of certified copies of the deeds, which abstract showed the patent to the land to Wm. P. Chism; the warranty deed from Jack Blackman to J. M. Blackman, dated August 6th, 1892; warranty deed from J. M. Blackman and wife to T. D. Blackman, of date December 4th, 1920, showing vendor's lien retained to secure the four purchase money notes above noted, which deed was introduced "for the purpose only of showing that the interest of Wylene Blackman was obtained through a fictitious sale from J. M. Blackman and wife to T. D. Blackman in order to gain possession of those certain vendor's lien notes described therein in order that they might be applied as collateral security to enable the said J. M. Blackman to obtain a loan from J. A. Knowles."

J. M. Blackman testified to the following facts: That T. D. Blackman, the son of the witness, is dead; that said instrument was not intended as a conveyance of right of the property, but was made for the purpose of enabling the witness to borrow money on the vendor's lien notes, which purpose was known to T. D. Blackman at the time; that he had theretofore made a gift to T. D. Blackman of other property, in which he claimed no right; he used the vendor's lien notes as collateral security for a loan made to him by J. A. Knowles, which note to Knowles he had later paid, and at the time of such payment the vendor's lien notes were returned to him by Knowles; T. D. Blackman never paid anything on those notes, and never paid anything for the conveyance; witness has paid all the taxes on the land; T. D. Blackman never took possession of it; witness has been farming the land ever since; the land in controversy was the east end of the farm owned by witness; T. D. Blackman's family is now living with the plaintiff, but was living on the other land given to T. D. Blackman at the time of the death of T. D. Blackman; the tract so given to T. D. Blackman was 100 acres; Wylene Blackman is now six years old; T. D. Blackman, the father of the minor, died May 6th, 1926.

J. A. Knowles, introduced as a witness by the plaintiff, testified as follows: He had lived in Kilgore, Texas, 26 years; he had had business dealings with J. M. Blackman about 30 years; on December 4th, 1920, J. M. Blackman applied to him for a loan and offered to give the vendor's lien notes above mentioned as collateral security therefor; T. D. Blackman never paid any part of the loan the witness made to J. M. Blackman, but the same was paid by J. M. Blackman; T. D. Blackman never

went into possession of the land in controversy.

Jessie Blackman, mother of the minor, was introduced as a witness by the plaintiff, and testified substantially as follows: She was the wife of T. D. Blackman and mother of minor defendant, and guardian of the estate of the minor; she heard Knowles and J. M. Blackman testify; which testimony she said was true; she had executed to J. M. Blackman a deed of conveyance to all of her interest in the land in controversy, and now claims no interest therein; the 100 acres theretofore given to her husband by J. M. Blackman is oil producing land; witness had lived in the home of J. M. Blackman ever since the death of her husband, and J. M. Blackman has taken care of the witness and of the minor child; T. D. Blackman never at any time took possession of the land in controversy; Wylene Blackman is the only surviving child and heir of T. D. Blackman.

On Examination by the court, Jessie Blackman testified as follows:

"Q. You are testifying this way because that is the way you understood it or just because you feel under obligation to J. M. Blackman because you are living at his home? A. That is the way I understood it."

The record of those proceedings in the trial of that case does not show that the guardian ad litem appointed by the court interposed any objection to the testimony of J. M. Blackman, to the effect that his deed to T. D. Blackman, of date December 4th, 1920, was executed under an understanding between the parties thereto that the same was fictitious and made for the sole purpose of enabling J. M. Blackman to use the vendor's lien notes therein recited as collateral security for a loan, on the ground of incompetency of the witness thereto, under provisions of art. 3716, Rev.Civ.St., reading:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

The testimony of Jessie Blackman, in general terms, in answer to question by the court that she had heard that given by J. M. Blackman and Knowles and the same was true, admitted without objection by the guardian ad litem, reasonably could not be given effect as corroborative of the testimony of J. M. Blackman, to the effect that T. D. Blackman accepted the deed with the understanding that it was to be effective only as a mortgage. And the same can be said of her further testimony, as follows:

"Q. Did you understand at the time this deed was made to T. D. Blackman that it was given in order to enable him to put up the notes for collateral security? A. Yes."

■■ It is apparent, therefore, that the judgment rendered in favor of J. M. Blackman against the minor for title to the land in controversy was based. principally, if not solely, on the incompetent testimony of J. M. Blackman as to that understanding with T. D. Blackman, when the deed was made. It must be presumed, also, that the court would have excluded that testimony if objection had been urged thereto, based on the statute, above quoted.

The statement of evidence filed with the record of that case shows that none of the many documents listed above showing any of the transactions of J. M. Blackman, while acting as guardian of the estate of his ward, listed above, was brought to the attention of the trial court, in the trial of the suit of J. M. Blackman against the minor.

■ In the absence of evidence of any of the guardianship proceedings, J. M. Blackman could not and did not undertake to testify that he listed the property in controversy in his verified inventory, filed by him as guardian, with no intention of waiving his individual claim of right thereto.

Therefore, there is no merit in the contention made by appellee in his brief, that such listing of the property in the inventory did not operate as an estoppel, because he did so without any intention that the same should operate as a recognition of title in the minor. In that state of the record, authorities cited by appellee, such as Koppelmann v. Koppelmann, 94 Tex.

40, 57 S.W. 570, in which it was held that a father, who as guardian of his children, included in the inventory of his ward's estate property which belonged to himself, with no intention to waive his right thereto, is not estopped thereafter to claim it, in the absence of fraud; and the case of McCartney v. McCartney, 93 Tex. 359, 55 S.W. 310, according the same right to a surviving wife, who had listed her separate property as belonging to the community estate of herself and husband, manifestly have no application in this case.

No testimony was introduced on the trial of Cause No. 123–B, sufficient to make a prima facie showing that the property conveyed to T. D. Blackman was the homestead of the grantors. Indeed, in plaintiff's testimony, no such claim was made; homestead was never mentioned.

In that state of the record, the authorities cited by the appellee, relative to the homestead rights of plaintiff's wife, have no application whatever in this suit.

■ Appellee's further contention that the judgment in cause No. 123–B, sought to be set aside, was supported by proof of title in plaintiff under the ten year statute of limitation, Vernon's Ann.Civ.St. art. 5510, is without merit, at all events, because a claim of title by limitation was not pleaded by plaintiff in that suit. 41 Tex.Jur., sect. 86, p. 567; Erp v. Tillman, 103 Tex. 574, 131 S.W. 1057, and decisions cited.

■ As shown by the deed from J. M. Blackman to T. D. Blackman, which was introduced in evidence on the trial of cause No. 123–B, the last purchase money note recited in the deed matured November 1st, 1924. Under provisions of art. 5520, Vernon's Ann.Civ.St., all those notes were conclusively presumed to be paid on November 1st, 1928, which was four years after the due date of the last note, and thereafter, under the terms of the same article, any superior title to the land remaining in the grantors, by reason of the retention of the vendor's lien, ceased to exist. And since the suit No. 123–B, by J. M. Blackman, in which he recovered title of the minor in the land in controversy, was not instituted until October 14, 1931, it was apparent from the face of the deed itself that the plaintiff had no title in the land sued for, in spite of his testimony, and that of the witness, Knowles, that the grantee had never paid any of the notes.

■ Nor is there merit in appellee's further contention that this suit should have been abated, for lack of necessary parties, towit, those to whom J. M. Blackman, as guardian, had executed leases and conveyances of mineral interests in the minor's land, while he was guardian.

Plaintiff is not seeking to set aside those transactions, and the judgment sought here could not in any manner affect the holders of the interests so conveyed to such persons. 32 Tex.Jur., par. 9, p. 13, and authorities cited.

■ The evidence introduced on the trial of the present suit was sufficient to support the allegations in plaintiff's petition in this case, that the former judgment in favor of J. M. Blackman against the minor was not only without competent proof of title in himself, but was procured by fraud, practiced upon the trial court as well as against the minor defendant.

As shown by the record in Cause No. 123–B, 16 days after J. M. Blackman filed his final account as guardian of the minor's estate in his hands, and the mother of the minor had been appointed guardian, in his stead, and when the property was shown to be valuable oil property, he instituted that suit, to recover of the six year old minor title to property in controversy. His testimony on the trial of that case repudiated the title he had conveyed to T. D. Blackman, by his deed, with warranty of title, of date December 4th, 1920, which he introduced in evidence on the trial of that case and which he had never before challenged; also repudiated his sworn statement many times repeated in his guardianship proceedings, that the minor was the legal owner of an undivided one-half interest in the tract of land described in the judgment rendered in cause No. 123–B, and which proceedings were introduced in evidence in trial of the case at bar. Without doubt, those facts, in connection with his failure to disclose to the court on the trial of the former suit his transactions in the handling of the property for the minor, reasonably tended to show a fraudulent purpose to deprive the minor of her title to the land in controversy, to say nothing of other facts of like tendency, which it is unnecessary to relate. And the action of the trial court, in withdrawing from the jury the determination of that issue, by his peremptory instruction to return a verdict for the defendant, was clearly reversible error.

The foregoing conclusions are in accord with an unbroken line of decisions of the appellate courts of this state, only a few of which will be noted.

McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357, 358, is a leading case on the question of reopening suit after judgment is rendered.

We quote the following from the opinion of Justice Stayton, in that case:

"This action was brought by the plaintiff in error on January 31, 1885, in the district court for Live Oak county, to vacate a decree rendered by that court on March 15, 1883, and to recover her share of the community property of which she claimed to have been defrauded through a decree obtained through willfully false evidence given and produced by her husband on the trial of an action for divorce instituted by him. * * *

"The petitioner in effect alleges that the defendant procured a decree to be rendered in his favor whereby she was deprived of her share of the community property, and that this was accomplished through willfully false testimony given by the defendant himself in reference to a matter which, from their relation, he had means of knowledge not accessible to her. * * *

"It has often been asserted in this state that the district courts, in the exercise of their equitable powers, may grant, by re-examining the case on its merits, such relief as equity and justice may demand, when it is made to appear that a judgment has been obtained by fraud, mistake, or accident, without any want of diligence on the part of the person against whom rendered. Overton v. Blum, 50 Tex. [417], 423.

"That the willful giving of false testimony by a party to an action in relation to a matter affecting an issue to be tried is fraud of the most pernicious character cannot be questioned, and for such conduct it has been held that the injured party was entitled to have the cause re-examined." Citing many authorities.

"If the averments of the petition before us are true, it cannot be denied that the plaintiff in error was prevented, by the fraud of the adverse party, from fully presenting all of her case at the time the decree was entered, and so without any want of diligence on the part of herself or counsel. If fraud was committed, this was done in obtaining the judgment, and not in some step which preceded the trial, of which the complainant was cognizant, and ought to have been prepared to meet.

"The rule which denies to a party the right to relitigate a matter once in controversy, and decided by a court having jurisdiction, is one on the observance of which the welfare of society largely depends, and should not be frittered away; but it assumes that there has been a trial in which the respective parties have had an opportunity to fully present their claims. It ought not to be given application when it is clearly made to appear that one party has, by his own false evidence, knowingly given, or by the evidence of others by him introduced and known to be false, obtained a judgment or decree against his adversary which gives to him something which truth and justice would deny.

"If, by accident or mistake, without fault or neglect of his adversary, one obtains a judgment or decree which he ought not to have, relief may be given. And why? Certainly for no other reason than that the party affected by the accident or mistake has not had an opportunity to present his rights. When one is deprived of the power to do this by the knowingly false testimony of his adversary, is he to be denied relief when it is to be given, on the ground of accident or mistake, when his adversary may be without fault?"

That decision has been cited and followed in numerous later cases, a few of which are: Ralls v. Ralls, Tex.Civ.App., 256 S. W. 688; Walker v. State, Tex.Civ.App., 103 S.W.2d 404; Davis v. Jones, Tex.Civ. App., 149 S.W. 727, writ refused; Colvin v. Colvin, Tex.Civ.App., 91 S.W.2d 910; Reed & Reed v. McKee, Tex.Civ.App., 204 S.W. 717; Hammond v. Atlee, 15 Tex. Civ.App. 267, 39 S.W. 600; and Kruegel v. Cobb, 58 Tex.Civ.App. 449, 124 S.W. 723. And of like import is Harn v. Phelps, 65 Tex. 592, 597.

The following decisions have particular application to actions to set aside judgments rendered against minors or others who were not sui juris at the time of rendition: Greathouse v. Fort Worth & D. C. R. Co., Tex.Com.App., 65 S.W.2d 762, 765 was an action by bill of review instituted by the guardian of J. D. Greathouse, a boy six years of age, to set aside a judgment theretofore rendered in favor of the minor, in a suit instituted by his grandmother, Mrs. Lizzie Greathouse, as his next friend. The judgment was in favor of the boy for

$1,500, of which amount $600 was by the court decreed to plaintiff's attorney, as damages resulting from the death of his father, through negligence of the railroad company. It was rendered on agreement of all parties to the suit; the agreement for the minor being by the grandmother, as next friend, and also by an attorney appointed by the court as his guardian ad litem; and the agreement was duly approved by the court in the judgment rendered.

The judgment was attacked for fraud of the grandmother, participated in by the railroad company, and the trial court sustained that attack and awarded the guardian damages in the sum of $15,000, less a credit of $1,500, paid under the former agreed judgment. On appeal from that judgment this court held the agreed judgment binding on the minor and a bar to his suit for further damages. But that holding was reversed in opinion of the Commission of Appeals, expressly approved by our Supreme Court, from which we quote the following:

"The statute (article 1994, Rev.Stat. 1925) provides that minors having no legal guardian may sue and be represented by 'next friend,' who shall have the same rights as guardians, and may with the approval of court compromise suits and agree to judgments, which, when so approved by the court, are binding and conclusive; but this rule is of course subject to the further rule that any such judgment may be directly attacked for fraud, collusion, or neglect. Cannon v. Hemphill, 7 Tex. 184; Schneider v. Sellers, 25 Tex.Civ.App. 226, 61 S.W. 541; Day v. Johnson, 32 Tex.Civ.App. 107, 72 S.W. 426.

"This is a direct attack upon the judgment. Stephens v. Hewett, 22 Tex.Civ. App. 303, 54 S.W. 301; McMurray v. Mc-Murray, 67 Tex. 665, 4 S.W. 357; Murchison v. White, 54 Tex. 78.

"The bringing of a suit by next friend for a minor in no way changes his status; his disabilities are not removed or suspended by bringing such suit (Galveston, H. & S. A. R. Co. v. Washington, 25 Tex. Civ.App. 600, 63 S.W. 538, 540), and his interests must, in good faith, be fully protected; he is non sui juris and altogether under the court's protection. A minor appears in court as plaintiff by next friend and as defendant by guardian ad litem. Wallis v. Stuart, 92 Tex. 568, 50 S.W. 567; 22 Cyc. 638, 653, 673; 31 C.J. 1118; 10 Encyc. Pleading & Practice, 594.

"The guardian ad litem or next friend can make no concessions nor can he waive or admit away any substantial rights of the minor, or consent to anything which may be prejudicial to him. Wright v. Jones (Tex.Com.App.) 52 S.W.2d 247; Moore v. Prince, 5 Tex.Civ.App. 352, 23 S.W. 1113.

"If, therefore, it be shown that the minor's case was not properly laid before the court, by collusion, neglect, or mistake, a new bill may be brought in behalf of the infant, and if it be established that the judgment was against the interests of the minor, and the facts which made it so were not disclosed to the court, and the court was therefore induced to approve the agreement for judgment, the minor may, as between the parties to the judgment, have the same set aside by a bill of review. Day v. Johnson, 32 Tex.Civ.App. 107, 72 S.W. 426; Schneider v. Sellers, 25 Tex. Civ.App. 226, 61 S.W. 541; Cannon v. Hemphill, 7 Tex. 184."

Announcements to like effect are to be found in several other cases, including Madero v. Calzado, Tex.Civ.App., 281 S. W. 328; Wright v. Jones, Tex.Com.App., 52 S.W.2d 247, 251; Ralls v. Ralls, Tex. Civ.App., 256 S.W. 688.

■ In addition to the foregoing conclusions, we will add that not only does it appear from the face of the record of the proceedings in Cause No. 123–B that the judgment therein rendered was erroneous and grossly unjust to the minor, Wylene Blackman, but to give it effect as a valid decree, would be to destroy the prior rights of the minor in the property in controversy, accruing to her under the guardianship proceedings in the county court, at the instance of J. M. Blackman himself, as her guardian, and which he is estopped to impeach; and that, too, without any direct attack thereon, by suit instituted in a court of competent jurisdiction.

For the reasons noted the judgment of the trial court, from which this appeal has been prosecuted, is reversed and the cause is remanded for further proceedings not inconsistent with our foregoing conclusions.

### On Motion for Rehearing.

The conclusion stated in our opinion on original hearing, that J. M. Blackman was estopped to recover title of the minor in the former suit, was an estoppel in law resulting from his deed with warranty of title to T. M. Blackman, from whom the

minor inherited the property, and also from his repeated admissions, acts and deeds in his guardianship proceedings, recited in our original opinion. 14 Tex.Jur., pp. 899 to 903, inclusive, and decisions there cited; 19 R.C.L. pp. 676-681; 21 C.J. 1067.

Furthermore, Wylene Blackman's title was vested through J. M. Blackman's deed to her father, without the necessity of resort to the principles of equitable estoppel in pais, which are stressed with much earnestness in appellee's motion for rehearing.

This being a direct attack by bill of review on the former judgment, for fraud in its procurement, the rule that in an appeal from a judgment rendered by the trial court without a jury, the presumption will be indulged that the trial judge based his judgment on competent evidence found in the record and sufficient to support the judgment, to the exclusion of improper evidence admitted, manifestly, has no proper application in this case.

Appellee's motion for rehearing is overruled.